Cite as 2021 Ark. App. 67

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-20-157

| | |
|---|---|
| | **Opinion Delivered:** February 10, 2021 |
| AMERICA'S PRE-OWNED SELECTION, LLC<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION<br>[NO. 60CV-17-6932] |
| V. | |
| FRANCHESICA WILLIAMS<br>APPELLEE | HONORABLE ALICE S. GRAY, JUDGE |
| | AFFIRMED |

## MIKE MURPHY, Judge

The cause of action in this case stems from the purchase of two vehicles. Asserting that the appellant, America's Pre-Owned Selection, LLC (APOS), did not tender conforming goods and engaged in deceptive trade practices, Franchesica Williams, the appellee, attempted to rescind her contract to purchase both vehicles. When she returned the first car and the dealership repossessed the second, she brought this case to recover her down payment and sought punitive damages. The lower court ruled in Williams's favor, awarding her almost $5000 for her down payment and an additional charge, and $3500 in punitive damages. APOS now appeals. We affirm.

On March 13, 2017, Williams purchased a 2011 Dodge Charger from APOS. Testimony at trial established that Williams saw the car advertised on Facebook, drove to the dealership in Little Rock from her home in Jonesboro, and asked to see the car. She was

told the car was in detail, but the salesperson offered to begin the purchase paperwork so that once it was out, Williams could be on her way. He told her the Dodge had been serviced and was in good condition. Without having first seen or driven the car, Williams handed the salesperson her debit card. Williams testified that she tendered $4575 as a down payment for the Charger. The car then came out of detail, Williams finished signing the paperwork (the car was being sold as-is), but they would not let Williams inspect or test drive the car. She asked for her money back but was told there was nothing they could do. She left with the Charger, and it broke down just down the road from the dealership.

Williams called the dealership numerous times asking for help, but they kept hanging up on her. She finally had to call her uncle, and he drove from Blytheville to tow her and the Charger to Jonesboro. Williams then tried getting the Charger tagged, but there were issues with the bill of sale, VIN, and car description. Williams towed the car back to APOS.

Williams testified that when she arrived at the dealership, they told her they could just trade her car out with another, but they gave her no choice in the replacement vehicle. They would not refund her money from the Charger. She stated they were hostile and said she could either take what they gave her or walk back to Jonesboro. Williams testified that she signed all the paperwork for the replacement car, a 2011 Hyundai Sonata, but after she finished signing it, the salesperson "snatched" the paperwork out of her hand and wrote the additional problems/disclaimers about the Sonata on the paperwork:

> This vehicle is sold As-Is. The buyer is responsible for all repairs current and whichever ones may arise in the future. The current issues include: bad brakes, needs tire bad, and a loud clicking in steering column when the steering wheel is turned. The dealer has no clue how insignificant or serious the steering problem may be. The customer understands all of the current issues and accepts this vehicle As Is.

Williams drove the Sonata home but never registered it and never made payments on it. APOS repossessed the car about fourteen days later. Thereafter, Williams brought suit against the dealership seeking revocation of the purchase contracts, asserting fraud and misrepresentation, and requesting damages.

At trial, in addition to the foregoing testimony, Stephanie Gardner, the manager of APOS, testified that she did not know what the salesperson told Williams the day she purchased the Charger but that she sold the car to Williams "as is," and Williams called after she left the dealership saying the tire blew out and she could not afford the gas for the Charger. She said that Williams wanted the Sonata because she wanted a newer-looking car, and they did Williams a favor by letting her swap the vehicles. She said that Williams drove the Charger back to the dealership, and after they resold it, they received no complaints about it. Gardner testified that "as-is" was carefully explained to Williams because they explain it to all of their customers, and Williams was never forced to buy a car or forced to sign paperwork.

The court found that Williams met her burden of proof to revoke her acceptance of the contracts and to prove both fraud and violation of the Arkansas Deceptive Trade Practices Act. It awarded her a total of $8461.25; $4575 for her down payment on the Charger, $386.25 for a charge on her debit card by the dealership that Williams testified she did not authorize, and $3500 in punitive damages for fraud.

APOS appealed. On appeal, it argues that the findings for recission recession, fraud, and violation of the Arkansas Deceptive Trade Practices Act are not supported by the evidence and that damages were therefore improperly awarded.

3

APOS appeals the judgment of damages from a breach–of–contract cause of action entered after a bench trial. In appeals from civil bench trials, our standard of review on appeal is not whether there is substantial evidence to support the findings of the court but whether the court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Barnes v. Wagoner*, 2019 Ark. App. 174, at 3, 573 S.W.3d 594, 595–96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made. *Id.* Where the issue is one of law, our review is de novo. *Id.*

The appellant frames its arguments in the following four points: that (1) "the lower court erred in finding that appellee's evidence was sufficient to prove that appellee was forced to sign an 'as–is' contract"; (2) "the lower court erred in finding that there was sufficient evidence to find that appellant committed fraud"; (3) "the lower court erred in its failure to find that when the dodge charger was traded in for the hyundai sonata, then that concluded any claim of appellee for damages concerning the dodge charger"; (4) "the lower court erred in its finding that appellee presented sufficient evidence to prove that she revoked her acceptance of the two cars, and, whether any such revocation was appropriate according to the evidence"; (5) the lower court erred when it found the "appellant violated the Arkansas Consumer Protection Act" and that the "Arkansas Consumer Protection Act provides any damages in this situation"; and finally that (6) "the lower court erred in finding that any damages at all were proven by appellee and by finding that appellee was entitled to any damages whatsoever."

For the first three points, the appellant cites no legal authority to support its arguments. This court may refuse to consider an argument when appellant fails to cite any legal authority, and the failure to cite authority or make a convincing argument is sufficient reason for affirmance. *Moody v. Moody*, 2017 Ark. App. 582, at 12, 533 S.W.3d 152, 160. Further, insofar as the appellant argues that the trial court erred in failing to make specific findings, our court presumes that in the absence of a showing to the contrary, that the trial court acted properly and made the findings of fact necessary to support its judgment. *Morris v. Knopick*, 2017 Ark. App. 225, at 9–10, 521 S.W.3d 495, 502.

APOS's fourth argument is that Williams presented insufficient proof that she revoked her acceptance. Because we affirmed the court's findings that APOS committed fraud, we likewise hold that it was correct of the lower court to find that rescission of the contracts was appropriate. *See, e.g.*, *Roach v. Concord Boat Corp.*, 317 Ark. 474, 476, 880 S.W.2d 305, 306–07 (1994).

In point five, the appellant contends that it was error for the lower court to find that it violated the Arkansas Deceptive Trade Practices Act, codified at Arkansas Code Annotated sections 4-88-101 et seq. (Repl. 2011 & Supp. 2019), solely because the

> only remedies established in this Code refer to expenses incurred by the Attorney General in Arkansas Code Section 4-88-113(e) and in civil cases brought by the Attorney General. There is no other provision concerning remedies sought by a private person. It was error for the lower court to award damages based on the Arkansas Deceptive Trade Practices Act.

This is the extent of the appellant's conclusory argument, and it ignores that in Arkansas Code Annotated section 4-88-113(f), a private remedy is established for "[a]ny person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter."

This person "has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees." *Id.* The appellant did not make any argument regarding whether Williams suffered "actual damage or injury" and instead simply—and incorrectly—stated that there was no remedy under this statute for any party who is not the Attorney General. It is a well-settled principle of appellate law that we will not make a party's argument for it. *Thigpen v. City of El Dorado*, 2020 Ark. App. 531, at 7. On this point, we also affirm.

Finally, in point six, APOS argues that "the lower court erred in finding that any damages at all were proven by appellee and by finding that appellee was entitled to any damages whatsoever." However, Williams testified that she made a down payment of $4575 for the Charger, and her card was charged another $386.25 without her authorization. The dealership had traded the Sonata for the Charger but then took possession of the Sonata leaving Williams without any car at all; accordingly, a preponderance of the evidence supports the award of $4961.25.

The remaining $3500 damages were awarded as punitive damages when the court found that the appellant committed fraud. The purpose of punitive damages is deterrence and punishment of wrongdoing. *Thomas Auto Co. v. Craft*, 297 Ark. 492, 498–99, 763 S.W.2d 651, 654–55 (1989). Punitive damages may accompany restitutionary awards when there is proof of the elements of deceit as a basis of revocation of acceptance or extrajudicial rescission. *Id.* APOS does not make any specific argument regarding the amount of the damages. Here, because we affirmed the finding of fraud—a tort comprising an element of deceit—we therefore hold that an award of punitive damages was not erroneous.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Everett O. Martindale*, for appellant.

*TS Branch Law Firm PLLC*, by: *Tabatha Branch*, for appellee.